ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.   1:19CR111 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| BRIAN LOUK, | ) | |
| | ) | ORDER |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant's motion for compassionate release. The motion is DENIED.

Within the COVID-19 backdrop, the Sixth Circuit has recently explained this Court's duties and obligations when considering a motion for compassionate release.

> Sections 3582(c)(1)'s and (c)(2)'s parallel language and structure compel us to conclude that compassionate release hearings are sentence-modification proceedings and that courts considering motions filed under § 3582(c)(1) must follow a *Dillon*-style test. The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[ (1)(A) ] instructs a court to

> consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020)(citations and footnotes omitted). However, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111.[1]

   I.  § 3553(a) Factors

      a. Standard

As noted above, this Court may "not modify a term of imprisonment once it has been imposed" unless specifically authorized to do so by section 3582(c). This Court may grant compassionate release if, after considering the factors in 18 U.S.C. § 3553(a), it determines that "extraordinary and compelling reasons" warrant a reduced sentence and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A)(i). For ease of reference, the § 3553 factors are as follows:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

---

[1] For the purposes of this motion, the Court will assume for the sake of argument that the Covid-19 pandemic and the conditions it has created within the prison at issue are extraordinary and compelling reasons sufficient to satisfy step two.

2

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C.A. § 3553.

The Sixth Circuit has noted that "District judges maintain an obligation to provide reasons" when resolving motions for compassionate release. *Jones*, 980 F.3d at 1112.

> We start by requiring a thorough factual record for our review: district courts must supply specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its compassionate release decision. We look at the whole record in sentence-modification proceedings, including the records from the original sentencing, records on the modification motion, and the final compassionate release decision.

*Id.* (citations, quotations, and alterations omitted).

### b. Analysis

Defendant Brian Louk filed his motion for compassionate release under seal (Doc. 36), and the Government has opposed the motion. Doc. 38. The Court now reviews the parties' arguments.

Initially, the Court notes that "federal courts have been disinclined to grant compassionate

3

release to petitioners convicted of crimes involving child pornography, even for vulnerable petitioners during the COVID-19 pandemic, citing potential dangerousness." *Coleman v. United States*, 2020 WL 3039123, at *4 (E.D. Va. June 4, 2020) (denying motion for compassionate release because defendant's release plan did not adequately protect the public from the potential of a subsequent offense involving child pornography and because defendant had not participated in rehabilitative programming specific to his offense). Nevertheless, "while offense conduct may inform the Court's discretion in deciding a motion for compassionate release and determining the appropriate conditions of release, such a motion may not be denied simply because of the underlying offenses." *Id*.

Louk's request focuses upon his health: "He suffers from COPD, diabetes, arthritis, neuropathy, and Charot foot. Mr. Louk is 59 years old, blind in one eye, and has limited mobility because of his numerous health issues. Mr. Louk's medical issues, particularly his COPD and diabetes, place him at high risk for severe illness if he contracts COIVD-19." Doc. 36 at 9. Louk's motion, however, fails to analyze any other § 3553(a) factor.

Louk's underlying offense included his possession of a total of 749 video files containing child pornography -- 53 video files contained images of infants and toddlers, and 19 of the video files contained sadistic and masochistic conduct. The PSR described the content of several of those videos as follows:

> ▪ File name: "ptch2014 webcam omegle vichatter skype two girls 2gilrs." The video is a 19 minute 29 second video depicting two prepubescent female children engaged in sexual activity with each other.
>
> ▪ File name: "95754" - A 2:29 video showing a female infant being anally penetrated by an adult male.

4

> ▪ File name: "Pornflix and chill watching PORN with Daddy Pedo blowjob swallow" - This is a 8 min 06 sec video of a naked prepubescent female masturbating her genitalia for the camera. The video then showed the same female child performing oral sex on an adult male penis.
>
> ▪ File name: "Pedomom2016mix-Great" This video is a 7 min 03 sec minute video first showing an adult female performing oral sex on the penis of a prepubescent male child. The next scene showed the penis of a dog being forced into the mouth of an infant male while the infant cried. The next scene showed an adult female holding an infant male and placing her mouth on the baby's penis. The final scene showed a female adult masturbating the penis of a naked prepubescent male child who was placed on a bed and appeared to be drugged.
>
> ▪ File name: "Daisy's Destruction parts 2_3_4" This a 17 min 39 sec video which depicted the rape and torture of an infant female. An adult female wearing a mask put the baby's face into her vagina, digitally penetrated the baby's vagina, and then hit the child. The adult female held the baby down as the baby screamed, rubbed ice over the infant, and placed an ice cube in the baby's anus. The adult female then bound the baby's hands and feet to two rods with duct tape, placed duct tape over the baby's mouth, and hung the baby upside down. The adult female then placed clothes pins on the baby's nipples and labia of the baby's vagina, placed an ice cube in the baby's vagina; and then hit the baby in the vagina. The adult female then dripped candle wax into the infant's vagina. The next scene showed the adult female holding the infant over a toilet and urinating on the baby's face while the baby screamed. The final scene showed the adult female pouring a pitcher of water over the baby's face as the baby wailed.

Doc. 21 at 4. Louk admitted to investigators that he searched out and downloaded child pornography while his wife was away from home. Louk also informed investigators that he believed he had started downloading nearly five years before he was arrested.

At the time of his sentencing, Louk faced an advisory guideline range of 151 to 188 months. In large part due to Louk's health issues, the Court varied down and sentenced him to 97 months. Louk now seeks release after serving less than 24 months of his sentence.

The nature and circumstances of Louk's offense strongly weigh against his request to be placed in home confinement. As Louk himself admitted, he committed the instant offense

5

conduct over the course of five years while living with his wife. In his motion, Louk seeks permission to be confined in the very home where he downloaded child pornography. Louk contends: "Mr. Louk will not pose any danger to society while on home confinement. His wife will ensure he has no access to a computer or smart phone and eliminate any internet service to the home." Doc. 36 at 10. However, Louk's offense conduct demonstrates that he was able to download child pornography *for years* while living with his wife without her knowledge.

There is nothing before this Court to suggest that Louk would not return to his prior criminal conduct. He has not provided any information on programs, treatment, or counseling that he has completed in an effort to rehabilitate himself. As such, beyond his health concerns, Louk has not provided any factual basis to support his release.

Finally, the Court finds that both specific and general deterrence will not be satisfied if Louk were to serve less than two years in prison for a crime that carries a mandatory minimum of 5 years and that resulted in an initial advisory guideline range of 151 to 188 months.

Based upon a review of the totality of the factors listed in § 3553(a), the Court hereby DENIES Louk's motion for compassionate release.

IT IS SO ORDERED.

January 6, 2021  /s/John R. Adams
Date  JOHN R. ADAMS
  UNITED STATES DISTRICT JUDGE

6